*December,* 1823.            Lewis Judson *against* The State.

1, In a summary proceeding against the President of a Bank for a penalty for the Bank's default, the Bank must be described by the name given to it by its charter.
2, The President in his private character is not liable for the penalty imposed by the Act of 1820.
3, Bank stock is subject to taxation, unless the right to tax has been expressly relinquished.            AT *May* term, 1822, of the Circuit Court of *Mobile* County, "*Eldridge S. Greening,* Esq. solicitor of the first " judicial Circuit, moves the Court for judgment against " *Lewis Judson,* President of the *Mobile* Bank, for two thou- " sand dollars, which he has incurred by failing to pay into " the Treasury the taxes accruing from said Bank in the " year 1821. And it appearing to the satisfaction of the " Court, that *Lewis Judson,* President of the *Mobile* Bank, " has not paid into the Treasury of the State the taxes due " from the said Bank for the year one thousand eight hundred " and twenty-one, and that he has been served with legal " notice that motion would be made against him," &c. &c. " it is considered by the Court, that the State of *Alabama* " do recover judgment against *Lewis Judson* [who has ap- " peared by *Samuel Acre,* Esq. his attorney, to contest said " motion] for the sum of two thousand dollars," &c. &c.

DECEMBER, 1823.

Lewis Judson
v.
The State.

By a bill of Exceptions it appears that the solicitor for the State offered in evidence a notice which had been published in the *Cahawba* press and served on the defendant, to the admission of which, the defendant by his counsel objected, inasmuch as he [defendant] was President of " the *Bank of* " *Mobile*, and not of any Bank under the name of the *Mobile* " *Bank*."

On his writ of Error to this Court, *Judson* assigned as Errors :—

1st—The motion, and the matters therein contained, are not sufficient in law for the State to sustain the aforesaid action.

2d—The motion prays for judgment against said *Judson* as President of the *Mobile Bank*, when by law it should have been against the President, Directors and Company of the *Bank of Mobile*.

3d—The Act imposing the tax on the stock of the Bank is contrary to its charter and unconstitutional.

This case was argued immediately after the preceding case of *Crawford* against the State, and as to the points common to both, the same arguments were relied on. It was further contended by *Acre* for the plaintiff in Error :—That a Corporation, being a mere ideal being, is known and exists only by the name by which it was created. The Bank of which the plaintiff in Error is President, and on whose stock the tax was laid, was created a body politic and corporate by the name of " The President, Directors and Company of the *Bank of Mobile* :" and by this name only can it sue or be sued. (Laws of Alabama, 47. 2 Mass. 146.) No such Bank as the *Mobile Bank* is known to the laws of the State ; nor is the plaintiff in Error President of any Bank known by this name.

Laying a tax on the stock is a new condition not contained in the charter. The stock was subscribed for on other conditions, beneficial to the State the grantor ; this new burthen is imposed in violation of the contract. This Banking Corporation is a limited sovereignty within the sphere prescribed by the charter. It enacts and enforces its ordinances and bye laws : its very existence depends on the exercise of the privileges granted. If its stock can be taxed at the pleasure of the Legislature, the transaction of its business, the exercise of all its vital functions may soon be effectually stopped. Taxing the Bank stock is like taxing the air which we breathe.

The Record shews no cause of action against the plaintiff in Error. A penalty of two thousand dollars has been adjudged against him for failing to pay the taxes alledged to

DECEMBER, 1823.

Lewis Judson
v.
The State.

be due from the *Mobile* Bank. No such Bank exists in this State, and no law has made it the duty of the plaintiff in Error to pay the taxes on the stock of the " *Mobile Bank.*"

*Hitchcock* for the State, in addition to his argument in the case of *Crawford* against *the State*, contended, that as to the misnomer, the plaintiff in Error appeared in the Circuit Court, and should have pleaded this matter in abatement.

To the most ordinary mind there can be no room for doubt, either in this case, or in any subsequent proceeding for the same default, as to the Bank from which the tax is due. Every one who reads the Record must at once perceive that *Judson*, although called President of the " Mobile Bank," is charged with the penalty by reason of the non-payment of the taxes due from the President, Directors and Co. of the *Bank of Mobile*. There was no uncertainty from the alleged misnomer, which could have misled him in his defence, or subjected him to the risk of a second recovery for the same cause.

Chief Justice *Lipscomb* delivered the opinion of a majority of the Court.

The first assignment is so vague that it presents no point distinctly to our view. On the second, two points are made.

1st—That the notice and motion are against *Lewis Judson* as President of the " Mobile Bank," when there is not any Bank known in our laws by that name : but he is President of the " Bank of Mobile."

If the judgment of the Circuit Court can be sustained, it must be by the provisions of the revenue Act passed 20th *December*, 1820, (Session Acts, p. 10). By that Act a tax of fifty cents is imposed on each share of the Stock of all specie-paying Banks in the State, and a greater tax on the stock of such as shall not pay specie by a given day ; and it is provided, that if the tax shall not be paid by the first day of *January* in every year, " That the President and Direc-" tors of said Bank, or any number of them in their indi-" vidual capacity, shall pay to the State two thousand dol-" lars : and in case of any such failure, it shall be the duty of " the Comptroller of public accounts to direct the solicitor " of the Circuit in which such defaulting Bank or Banks " may be, to proceed to the recovery of the same on mo-" tion in the Circuit Court : the said Comptroller of public " accounts giving notice in the *Cahawba* press to said de-" faulting Bank or Banks, of such motion so to be made ; " and the certificate of the Comptroller shall be deemed and " taken as full and sufficient evidence of such default or " failure."

This proceeding, as directed by this Statute, is to be summary, and of a nature unknown to the common law. The notice is to be as the leading process, and the certificate of the Comptroller the only evidence necessary to support the motion. That such a Statute must be construed strictly, that every circumstance essential to the exercise of this summary jurisdiction must appear in the Record, and that the Court can intend nothing in support of such proceedings, are principles so well settled by the books, and so often recognized by this Court, that they are not now to be controverted.

It is, however, contended that this Statute, being to raise a revenue for the support of government, is exempted from this strict rule of construction. This exception might plausibly be contended for as to so much of the Statute as relates to laying and fixing the amount of the tax. But, as to penalties for failing to pay the taxes, it must be subject to the rules of construction which apply to all other penal Statutes. This motion was not to recover the amount due for taxes, but to recover a penalty expressly so called.

One of the essential requisites to the exercise of this extraordinary jurisdiction is, that notice of such motion shall be given to such defaulting Bank.

If notice is to be given to the Bank, it must be in the name and style by which it sustains its legal existence, is to sue and be sued, implead and be impleaded, answer and be answered. It cannot be known to a Court by any other. (See the Charter. Laws Alaba. p. 46.) The plaintiff in Error is charged for having failed to pay the tax due from the "*Mobile* Bank." In the laws of the State, no Banking institution is known by this name: yet we are called upon to affirm a judgment rendered against him for a penalty, for the default of this imaginary Corporation. When a natural person is sued, advantage may be taken of a misnomer in the proceedings: much more then, may an artificial person, having no actual natural existence, and whose legal existence consists in its corporate name. It is contended that the appearance of the defendant in the Court below admitted the sufficiency of the notice, but the nature of the defence there would not admit of this inference, even if the proceedings were according to the course of the common law. For this defect in the notice, the judgment was clearly erroneous.

The second point contended for by the plaintiff in Error is, that the judgment was rendered against him individually, when, if the State could recover at all, it must be against the Corporation alone. To give the most liberal construc-

20

tion to the judgment, it is against *Lewis Judson*, President of the *Mobile* Bank. But the execution thereon would be against him, *de bonis propriis*. If the motion had been against the Bank by its proper corporate name, all the subsequent proceedings should have conformed strictly to it, as the leading process and the judgment would then have been against "The President, Directors and Company of the Bank of *Mobile*."

It is contended that the Legislature intended to make the President, or any number of the Directors, individually liable for the penalty ; and the expressions used in the Statute, if taken detached from the concluding part of the section, would seem to support such construction. The liability to pay the penalty is imposed on them ; but in prescribing the remedy for its recovery, the Statute clearly restricts it to operate against the Corporation only, and not against the President and Directors, or any of them individually.

This construction will relieve us from adjudicating a question of extreme delicacy. This Court would always feel great reluctance to enquire into the power of the Legislature as to any law which they had enacted. It cannot be doubted that we should be compelled to go into this enquiry if a different construction of the Statute prevailed. I cannot for a moment believe that the Legislature intended to make the President of the Bank and his private property liable for the penalty incurred by the default of the Corporation. *Lewis Judson*, in his individual character, and *Lewis Judson* as President of the *Mobile* Bank, are as distinct in action and in liability as two natural persons. But it is contended that a construction by which the plaintiff in Error would be held to be individually liable for this penalty, is reasonable, and supported by authority. The case has been assimilated to that of an agent who is liable for the taxes on the property of his principal in his possession. I have not been able to perceive a very strong analogy. The agent has a lien on, and control over, the property in his possession, and can indemnify himself. The President of a Bank cannot make the smallest disbursement out of its funds without the consent of the Corporation. A Director, acting separately, cannot dispose of or control the funds more than a mere stranger. Yet the construction contended for would subject the President or any Director to the whole penalty incurred by the Corporation, whose acts he could not control. If then the proceedings in the Circuit Court would have warranted any judgment in favour of the State, it should have been rendered against the "President, Directors and Co. of the Bank of *Mobile*."

It is further assigned as Error, that the Act of Assembly imposing a tax on the stock of the Bank of *Mobile*, is contrary to the provisions of its charter, and unconstitutional. It has been decided in this Court, that the charter of a Bank, whose stock is held by individuals as private property, is a contract, and under the protection of the provision in the constitution, which restrains the Legislature from passing any law violating the obligation of contracts, (*Logwood* et alii against *Huntsville* Bank, ante, p. 23, and see 4 Wheaton, 518, Dartmouth College case.) If the charter of the Bank of *Mobile* contained any express provision against the right of the State to tax its stock, any Act in contravention of such provision would be void. The right of taxation is necessary to the very existence of civil government; and wherever it has not been relinquished, is inherent in the Legislative power. It is objected, that if the Legislature have the power of taxing corporations *ad libitum*, there is no restraint to the imposition of such exorbitant taxes as will cramp ther operations and finally destroy them. This argument will apply with equal force to a tax on every species of property from which a public revenue can be raised. To reason from such extreme cases may perplex, but can tend to no beneficial result, and is as far from sound logic as from the proper sphere of judicial enquiry.

It is the opinion of the majority of the Court that the judgment must be reversed.

Judge *Crenshaw.*—In the two cases of *Crawford* against the State and *Judson* against the State, as the questions involved are of considerable moment, and as I concur with the majority of my brethren on some points, but dissent as to others, I conceive it to be my duty to state the grounds of my opinion.

I most cordially concur in the general position, that summary proceedings created by Statute, and in derogation of the common law, are to be strictly construed; and that every thing which is necessary to give jurisdiction and to shew that the case comes completely within the provisions of the Statute ought to appear in the Record. It is alleged that the Records in these cases do not shew these necessary matters; that it does not appear that the Banks had failed to pay the taxes, and that the penalties thereby accrued. The Statute requires notice to the party, a motion in the Circuit Court, and judgment thereon. This is all that is necessary should appear in the Record; the rest is but matter of evidence, and I think that this sufficiently appears.

The notices stated that motions would be made for the

penalties incurred by the failure to pay the taxes. The cases, as set out in the notices, are then of the description of which by the Statute the Court had jurisdiction on motion. The Statute provides that the Comptroller's certificate shall be evidence of the failure to pay the tax. It authorizes the introduction of evidence more convenient, though of an inferior grade, than that, which, without its aid must have been required. It does not exclude other sufficient evidence of this fact. It was not necessary that the certificate from the Comptroller, or any other part of the evidence, should be spread on the Record; nor are we, as I conceive, to presume that the judgment was rendered without sufficient evidence of the facts necessary to be proved.

It is objected that the notice is not to the Bank, but to the President. I conceive that notice to the head officer of a Corporation is legal notice to the Corporation and all its members: or, to take up the question on the principle of partnership, by our law service of process on one partner is equivalent to service on all: and the President is a stockholder and co-partner in the Bank. But the proceedings were authorized to be had against him alone, and it was not necessary that any one else should be notified.

The notice is objected to, inasmuch as it states that the President had incurred the penalty by failing to pay into the treasury the tax due from the Bank. Now, it can make no sort of difference whether the notice charges the failure to be by the President, or by the Bank : for if the tax be not paid, no matter where the default has been, the law makes the President liable for the penalty. The notice is, I conceive, sufficiently certain to a common, and even to a legal intent; every person who reads it must clearly understand its object. The President must have well understood that it was a notice to him, and through him to all the members of the Corporation; that a motion was to be made for judgment for the penalty accruing to the State by reason of the failure to pay the taxes due from the Bank. Any other construction would, in my opinion, be a refinement on words too nice to subserve, but admirably adapted to defeat, the purposes of justice.

In the case from *Mobile*, it was contended that the notice should have been to *Lewis Judson*, President of the " *Bank of Mobile*," and not to him as President of the " *Mobile Bank*." The President, it seems, understood the meaning of this notice so well that he thought proper to appear and resist the motion for judgment. This objection would, I grant, have been formidable, if the proceedings had been against the subscribers for the stock of the Bank, their as-

signs and successors, and if they only had been liable for the penalty. In that case they should have been styled by the legal name by which the Corporation must sue and be sued. This is the name by which they must be called, for all the purposes enumerated in the Act of incorporation. But when · *Lewis Judson* alone is sued as President of the Bank, it is not material what words of description are subjoined to his name, provided it sufficiently appears of what Bank he is President. The law does not require that he should be sued by the name of President of the Bank of *Mobile.* It is enough if the Bank from which the taxes are due, is sufficiently described, and it appear that he, as President, is liable for the penalty. The law has given a name to the Corporation, not to the Bank ; which, viewed separately from the President, Directors and Co., has no name designated by law, and in common parlance, is as well known by the name of the " *Mobile Bank*," as " *the Bank of Mobile.*" If this be a refinement, it is an answer to a refinement.

The assignments of Error, the arguments on the part of the plaintiffs in Error, and the opinion of a majority of the Court, seem to me to deny the right to tax a Banking institution, unless the power be expressly reserved in the act of incorporation ; for the right to impose a penalty for failing to pay the tax is denied, which is an implied denial of the right to tax. I will not undertake to prove self-evident propositions : that the people are bound to pay taxes : that a revenue is as necessary for the support of the body politic as the circulation of the blood to the animal body : that with us the power of taxation is vested in the Legislature, and that they are not prohibited either by natural justice or by the constitution from taxing every species of property, provided the tax be equal in its operation, are, I conceive, propositions which, if intelligibly stated, prove themselves. If a Bank has not paid a bonus to the Government for its charter, or the power of taxing it has not been expressly relinquished, there can be no good reason why its property or income should, any more than any other property, be exempted from taxation. A Corporation has no better claim to exemption from taxation than a natural person. They both derive the rights to their property from the laws of the land, and are alike protected in its enjoyment by the Government. If the Legislature then have the right to lay the tax, they also have the right to enforce payment of it by suitable penalties. The objections to this as well as the objections to the power of taxing the stock, were fully and ably answered by the Counsel for the State :

and the principles of law maintained by him, cannot, in my opinion be controverted. There seems to be something grating in the sound of the word "penalty!" But we are to be governed by the sense, not the sound, and the name or term used cannot be material. If the expression be more agreeable, let the sum to be recovered for failing to pay the tax, be called a double or treble tax. But let it retain the formidable appellation "*penalty.*" I think that the Legislature had the right to impose such penalty. A Banking, like any other Corporation, being an invisible, ideal, intangible person, may have no substantial property which can be taken to compel the payment of its taxes, and yet may be rich in capital stock, cash, out-standing debts, &c. I cannot see how the Legislature could prescribe any better or more effectual remedy than the present to compel the payment of the tax. They have no means by which to ascertain the amount of the taxable property of the Bank, or the amount of stock held by each Stockholder. Under these circumstances, if the Bank by its proper officers do not render an account of the amount of its taxable property, and pay the taxes according to law, it is competent for the Legislature to compel them so to do by the imposition of a sound penalty. If the Legislature had the power to take, they must also have had the power to enforce payment by the imposition of a penalty, as in the case of a private person, who for a default of this nature is subjected to a double tax. If the Corporation or its officers dislike the penalty, they can avoid it by doing that which the law has required of them. But it is said that the President cannot be made liable for the default of the Bank. I am unable to discover why. The President is a Stockholder, interested in the profits and losses of the concern; and this, I understand, is what constitutes a partnership; and any one co-partner is, I presume, (by our law) liable for all or any of the Debts due from the firm.

But I cannot understand how this invisible person is to be reached, without commencing with the head or ostensible agent. If the Corporation has no visible or tangible effects, all process known to the common law would be illusory. If the Legislature, from the nature of the Government, were rightfully vested with the power to lay and enforce the collection of the tax, the President of the Bank took the office subject to the exercise of this power, and to such other laws, not incompatible with the Constitution, as might be passed. If this law passed after he had taken the office, and he felt aggrieved by it, he could have resigned. He cannot, therefore, complain that the judgment is against him

in his private character : it is nothing like imposing a penalty on one person for the default of another ; but if it be necessary to resort to a comparison, it is like making one partner pay the tax jointly due from all, where all fail or refuse to pay.

From the fairest view which I have been able to take of the subject, I am of opinion that the Legislature had the right to tax the Bank stock, and to impose a penalty or higher tax, for a failure to pay the tax laid, and from the difficulty and necessity of the case, could rightfully charge the head officer of the Corporation with the penalty. The constitutional power of the Legislature as to a law passed, is a question which should be approached with great circumspection. The Legislature represents the sovereignty of the people. It is supposed to contain the collected wisdom and integrity of the State. It is not to be presumed that such a body would disregard the solemn obligation, and the restrictions under which its members act. An Act passed by them must plainly and palpably appear to be in violation of the Constitution, before I, as a member of this Court, can pronounce it so.

As to the case of *Crawford* against the State, under the Revenue Act of 1819, before I had the honour of being a member of this Court, it was decided that this Act, so far as it went to give original jurisdiction to the Supreme Court for the recovery of the penalty, was unconstitutional and void. In that decision I am disposed to acquiesce. The Act of 1820, giving jurisdiction to the Circuit Court, of a motion for the recovery of the penalty, can only have a prospective operation, and does not give to the Circuit Court jurisdiction in this summary way of delinquencies which had occurred prior to its passage. Though the penalties which accrued under the Act of 1819 are subsisting Debts due to the State, and may be recovered in some other way, yet neither of these Statutes (Revenue Acts of 1819 and of 1820,) as to the recovery of these penalties can apply.

I am therefore of opinion, that in the case of *Crawford* against the State the judgment should be reversed ; and that in *Judson's* case for the penalty of two thousand dollars, the judgment should be affirmed.